# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**OMAR J. ODETTE,**

       **Plaintiff,**          **CIVIL ACTION NO. 09-CV-11484**

  vs.

                                  **DISTRICT JUDGE THOMAS L. LUDINGTON**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12) be GRANTED and the instant Complaint DISMISSED.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits with a protective filing date of April 28, 2006 alleging that he had been disabled since June 5, 2003 due to a back injury. (TR 81-83, 102, 106). The Social Security Administration denied benefits. (TR 48-52). A requested *de novo* video hearing was held on July 21, 2008 before Administrative Law Judge (ALJ) E. James Gildea who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time from June 5, 2003 through the date of the ALJ's September 3, 2008 decision. (TR 13, 20- 21). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action

for judicial review. (TR 1-3). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was fifty-two years old at the time of the administrative hearing. (TR 25). He had worked for an automotive manufacturer for thirty years as a pipe fitter and plumber steam fitter. (TR 26). Plaintiff testified that in that job he frequently lifted between forty and fifty pounds and three to four times per week he lifted over one hundred pounds. (TR 26). Plaintiff stopped working when he was hurt in an accident at work which resulted in a back muscle injury. (TR 27). Plaintiff also testified that he has bilateral carpal tunnel syndrome for which he wears splints at night. (TR 32). Plaintiff drove himself to the hearing. (TR 25). He testified that he has been receiving a pension from his employer since 2006. (TR 25).

Plaintiff testified that he has undergone physical therapy, had approximately three injections, taken pain medication daily and tries to keep up with his physical therapy and stretching. (TR 27-28, 31). Plaintiff testified that for pain he takes Lodine 400 mg. twice per day, Kadian 20 mg. three to four times a week, and Vicodin ES for breakthrough pain. (TR 29). He also takes Lyrica 50 mg. at bedtime for his right hand. (TR 29). Plaintiff takes Vicodin only a few times a month due to side effects. (TR 30).

Plaintiff testified that his back muscles tighten, knot up and cause pain if he sits or stands too long or bends the right way. (TR 28). Plaintiff testified that the heaviest item he lifts is a gallon of milk because if he lifts something "the wrong way or if it's too heavy" it will strain him and he will

2

have to lie down for the remainder of the day or take pain medication. (TR 39). Plaintiff can stand for 25 to 30 minutes before he has to sit down due to pain. He can walk nearly a mile on a track at the fitness center. (TR 39). Plaintiff sleeps approximately three hours at a time before he wakes up and stretches and moves due to his back condition. (TR 40). Plaintiff usually lies down for about an hour in the afternoon due to soreness and stiffness in his back, which is somewhat relieved with ice or heat and putting his legs up. (TR 40).

**B.      Medical Evidence**

Plaintiff was injured at work in June 2003 after being blown off a ladder by a high pressure hose. (TR 209-10). Plaintiff has treated with Frederick Van Duyne, M.D., and Ed Atty, M.D., for the resulting back condition. On June 13, 2003, approximately one week after the accident, Plaintiff was examined by his physician, Dr. Van Duyne, M.D. (TR 210). Dr. Van Duyne noted Plaintiff's report that after the accident, Plaintiff experienced pain in his lower back and went to the first aid department where he was treated with heat. At his examination with Dr. Van Duyne, Plaintiff complained of constant pain radiating "a little" into the hip and pain with twisting, turning and getting out of a chair. (TR 210). The doctor diagnosed lumbosacral strain and prescribed Motion 800 mg. (Docket no. 210). X-rays of the lumbosacral spine from the same date were negative. (TR 212).

An October 9, 2003 MRI of the lumbar spine showed a "[s]mall central to right paramedian disc extrusion at the L5-S1 level with associated diffuse disc bulge causing bilateral lateral recess narrowing at this level" and "[n]o central spinal canal stenosis." (TR 215). A February 11, 2004 CT scan of the lumbar spine revealed "[m]ild posterior bulging of the disc at L5-S1 level" and "[n]o evidence of acute compression fracture." (TR 213). A whole body bone scan was negative. (TR 214).

3

Plaintiff attended physical therapy from May 2004 through November 3, 2004 to address low back pain. (TR 129-33). The physical therapist concluded upon discharge that Plaintiff had made gains in mobility but pain remained relatively unchanged. (TR 129). Plaintiff again attended physical therapy sessions through January 2006 to address lower back pain and left hip pain. (TR 127-28). A January 2006 progress note reports that Plaintiff had improvement in range of motion, strength, pain, activities of daily living and gait. (TR 127).

In July 2004 Dr. Atty noted that Plaintiff's lumbar motion was improved in flexion, extension and lateral bending with less pain. (TR 172). The doctor reported that Plaintiff was to continue with physical therapy until discharge and could return to work on July 27, 2004 with restrictions until August 30, 2004 including no lifting more than twenty pounds, working only four to six hours per day for five days a week, no repetitive bending or twisting and no climbing. (TR 172). In August 2004 Dr. Atty extended Plaintiff's restrictions to September 30, 2004 and noted that Plaintiff reported that his employer would not allow him back at work until he was off restrictions. (TR 170). In September 2004 the doctor again extended Plaintiff's restrictions for one month. (TR 168). In September 2004 Dr. Atty also noted that Plaintiff no acute distress and there was some improvement in flexion in lower lumbar movement but extension and lateral bending continued to be limited and painful. (TR 168).

From November 2004 through February 2005 Plaintiff continued to treat with Dr. Atty and complained of lower back pain. (TR 158-164). In December 2004 Dr. Atty noted that Plaintiff reported pain after walking for fifteen to twenty minutes, Plaintiff "still has difficulty running" and his strength was improved but still limited. (TR 162). Plaintiff was tolerating his medications with no side effects. (TR 162). In March 2005 Plaintiff underwent a fluoroscopic lumbar facet injection at L4-L5 and L5-S1 for lower back pain. (TR 154). Ed Atty, M.D., noted that Plaintiff had pain

4

relief within fifteen minutes of injection. (TR 154). In May 2005 Plaintiff reported improvement in his lower back pain and was taking Kadian, Lodine and Flexeril, but the pain was exacerbated in July 2005 and on August 1, 2005 Plaintiff underwent a lumbar facet injection under fluoroscopy. (TR 142, 146, 148).

On June 12, 2006 Plaintiff underwent a hearing test with Srinivas Mukkamal, M.D., which revealed retraction with the tympanic membrane on the right, but was otherwise normal, tympanograms were normal, and an audiogram revealed bilateral high-frequency mild-to-moderate sensorineural hearing loss. (TR 264). The doctor concluded that it was not asymmetric and did not represent acoustic neuroma. (TR 264). In September 2006 Plaintiff again began to complain of bilateral carpal tunnel symptoms, as set forth in further detail below. (TR 247).

    **C.**    **Vocational Expert**

The Vocational Expert (VE) testified that Plaintiff's past work as a pipe fitter is considered skilled and heavy in exertion although Plaintiff may have performed it at the heavy to very heavy exertion level. (TR 42). The skills are not transferable outside of the heavy exertion level. (TR 42). The ALJ asked the VE to consider an individual closely approaching advanced age with more than a high school education and past relevant work the same as Plaintiff's, with the residual functional capacity to perform light work which "does not require climbing ladders, ropes or scaffolds or more than occasional climbing of ramps and stairs or more than occasional balancing, stooping, kneeling, crouching or crawling and does not require constant handling or fingering." (TR 42). The VE testified that within the state of Michigan such an individual could perform jobs including light unskilled cashier (approximately 43,400 positions), information clerk (approximately 8,100) and counter and rental clerks (approximately 10,000). (TR 43). The VE testified that if there were unscheduled frequent breaks of one or more per day, the individual probably could not keep a

regular job. (TR 43). All of the positions assume an individual able to stand or walk up to six hours per day and anything less would be classified as sedentary. (TR 43). The VE testified that all of the testimony was consistent with the Dictionary of Occupational Titles. (TR 44).

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2008, had not engaged in substantial gainful activity since January 22, 2006 and suffers from disorders of the back and carpal tunnel syndrome, severe impairments, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 15). The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and although Plaintiff could not perform his past work, he has the ability to perform a limited range of light work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 16, l8). Therefore he was not suffering from a disability under the Social Security Act from June 5, 2003 through the date of the ALJ's decision. (TR 19).

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

7

F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence and the hypothetical question to the VE did not accurately describe Plaintiff's impairments and limitations. (Docket no. 9). Plaintiff also argues that the ALJ's statement that Plaintiff had amended his onset date to January 22, 2006 is incorrect and that Plaintiff's date last insured is June 30, 2010 and not December 31, 2008. (Docket no. 9).

**C.     Analysis**

*1.     Whether the ALJ's Credibility Determination is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. The only specific limitations which Plaintiff argues were not considered by the ALJ were Plaintiff's testimony that he cannot lift more than a gallon of milk because it causes pain in his lower back and his testimony that he can walk 15 to 20 minutes at a time and stand 25 to 30 minutes before he needs to rest of sit due to lower back discomfort. (Docket no. 9). Plaintiff also points out that no doctor has questioned the integrity or veracity of his complaints and symptoms. Plaintiff does not provide legal support for his implied argument that the same is necessary for the ALJ to make a determination that the claimant is not fully credible. *See* 20 C.F.R. § 404.1529.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (TR 17). First, the ALJ pointed out the "relatively mild findings of the objective evidence" related to both Plaintiff's back condition and Plaintiff's carpal tunnel syndrome. (TR 17).

9

The ALJ correctly noted that an October 9, 2003 MRI showed a "small central to right paramedian disc extrusion at L5-S1 with associated diffuse disc bulge causing bilateral lateral recess narrowing" and no spinal canal stenosis. (TR 215). June 13, 2003 x-rays of the lumbosacral spine was negative. (TR 212). In June 2006 Dr. Atty reported that Plaintiff's back pain was controlled with Kadian 20 mg. p.r.n. once per day, Norflex and Lodine and that Plaintiff was on a regular exercise routine. (TR 265, 282). Plaintiff's Norflex and Vicodin ES prescriptions were renewed. (TR 282). On June 28, 2006 Dr. Van Duyne reported that Plaintiff's chronic back pain was "doing well" and Plaintiff was "taking less and less medication." (TR 248). In September 2006 Dr. Van Duyne noted that Plaintiff reported that his carpal tunnel syndrome was flaring "as part of his studies to become a rabbi. He is doing a lot of writing and computer work." (TR 247). Plaintiff complained of a significant amount of numbness and tingling. (TR 247).

On October 9, 2006 Plaintiff complained of bilateral hand numbness, worse in the right and elbow pain on the right lateral aspect, worse with activity. (TR 279). Plaintiff denied neck pain or radicular pain from the neck. (TR 279). Plaintiff was advised to wear bilateral wrist splints every night for one month and was prescribed Lyrica. (TR 279). An October 13, 2006 EMG of Plaintiff's bilateral upper extremity was abnormal and revealed "very mild CTS (involving sensory fibers only)" of both the left and right upper extremity. (TR 285). There was "no evidence of other nerve entrapment, neuropathy or cervical radiculopathy." (TR 285). On November 2, 2006, Ed Atty, M.D., reported that Plaintiff's EMG showed "very mild carpal tunnel syndrome." (TR 276).

In a February 7, 2007 report, Dr. Atty noted Plaintiff's diagnoses as lower back pain secondary to facet syndrome, bilateral carpal tunnel syndrome and right lateral epicondylitis. (TR 272). Dr. Atty noted that Plaintiff had reported improvement in the numbness of his hands with wearing the braces at night, Plaintiff was taking less Kadian and he was sleeping "too well" on

Lyrica, his elbow pain was improving with icing and he had no new symptoms. (TR 272). Lumbar motion was improved but extension continued to be limited. (TR 272). Improvement in hand numbness with wearing braces was also noted in December 2006 and April 2007 (TR 274, 297). A flare in his back and carpal tunnel syndrome symptoms was noted in June 2007. (TR 294). By August 2007 Dr. Van Duyne noted that Plaintiff's back was "doing fairly well." (TR 293).

The ALJ also considered Plaintiff's treatment and its effect on his symptoms and concluded that "his treatment has been generally successful in controlling these symptoms." (TR 17). Plaintiff had some relief with facet injections and physical therapy increased strength and range of motion and decreased pain. (TR 17, 186, 194). On April 21, 2005 Dr. Van Duyne reported that Plaintiff had another injection, "got good relief," and was only taking one pain pill in the evening and continuing his own therapy. (TR 186). In December 2006 Plaintiff had full range of motion in the upper extremity and strength was 5/5 and symmetrical. (TR 260). Wearing braces at night helps to relieve Plaintiff's carpal tunnel syndrome. (TR 18, 260). As the ALJ pointed out, Plaintiff's physicians did not recommend surgery for Plaintiff's carpal tunnel syndrome and Dr. Van Duyne reported that it was "not surgical." (TR 18, 247). Use of pain medication has been effective. In March 2004 Dr. Van Duyne noted that Plaintiff's back was "fairly good" in the morning, but began to hurt in the afternoon, when Plaintiff was able to continue activities by taking a Vicodin ES in the afternoon and one at night. (TR 200). The doctor reported that Celebrex had helped. (TR 200). In September 2004 Dr. Van Duyne reported that Plaintiff had cut back on both his Kadian and Flexeril. (TR 193).

The ALJ also considered Plaintiff's daily activities. (TR 16-17). The ALJ pointed out that Plaintiff's description of his daily activities is "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (TR 16). Plaintiff testified that he goes to a

health club to exercise approximately three days a week and has been going for two years, where he lifts weights, stretches and walks. (TR 33). Plaintiff testified that he can walk almost a mile on the track there. (TR 34). He also testified that he tries to get out of the house for a couple of hours every day. (TR 33). Plaintiff engages in volunteer work "as much as" he can, including working at a food bank and local food kitchen, where he can serve food for about a half-hour. (TR 35). He is active in his parish and is pursuing a deacon formation program, for which he spends approximately ten hours per week studying. (TR 36, 38). He uses the computer at home on a daily basis for checking his email, although he testified that after typing "too long" his hand goes to sleep, so he types for approximately fifteen to twenty minutes at a time before he takes a break. (TR 37).

Plaintiff's reports of activity and those cited by the ALJ are supported by the reports of Plaintiff's doctors. On January 20, 2005 Dr. Van Duyne reported that Plaintiff was "doing pretty well" and "working out heavily" and that he "takes a Kadian" only occasionally as it allows Plaintiff to walk further without pain. (TR 189). On September 26, 2006 Dr. Van Duyne noted that Plaintiff's carpal tunnel syndrome was flaring up again due to Plaintiff's studies and "doing a lot of writing and computer work." (TR 247). In December 1, 2003 Dr. Van Duyne reported that Plaintiff's back appeared to be "stalled" and they decided to "lay off the therapy" for a month or so because specific exercises may have been overdoing it. (TR 202). In the same Report, Dr. Van Duyne noted that Plaintiff reported shortness of breath after climbing stairs at both a football game and a basketball game and that "[n]ormal activity around that house" does not seem to bother Plaintiff and that Plaintiff "goes shopping." (TR 202).

The ALJ's findings with respect to Plaintiff's credibility are based on substantial evidence in the record, including his determination that Plaintiff's alleged limitations that are inconsistent with the RFC are not credible, such as the allegation that he cannot lift more than a gallon of milk

or walk 15 to 20 minutes and stand 25 to 30 minutes before he needs a break. The ALJ properly considered Plaintiff's credibility and thoroughly explained his determination, which is supported by substantial evidence in the record.

## 2. *Whether the ALJ's Step Five Determination Is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's hypothetical question to the VE was not accurate because it did not contain limitations related to his allegations that he can lift no more than a gallon of milk and can walk only 15 to 20 minutes at a time and stand for 25 to 30 minutes before he needs to sit and rest due to lower back discomfort. (Docket no. 9). In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.,* 987 F.2d 1230, 1235 (6th Cir. 1993). As set forth above, the ALJ's credibility determination is supported by substantial evidence and the ALJ found that Plaintiff's alleged severe limitations were not credible. Therefore, the ALJ did not err in failing to include these weight, walking and standing limitations in the hypothetical question to the VE.

The ALJ found that Plaintiff has the RFC to perform light work limited to no climbing of ladders, ropes or scaffolds, only occasional climbing ramps or stairs and occasional balancing, stooping, kneeling, crouching or crawling and not requiring constant handling or fingering. (TR 16). Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). This weight restriction and climbing limitation is consistent with Dr. Atty's limitation in 2004 to lifting no more than twenty pounds. (TR 18, 172). On January 30, 2006 Dr. Van Duyne noted Plaintiff's report that Plaintiff and Dr. Atty had decided to pursue permanent disability and Plaintiff "is not going to be able to resume his ladder climbing, etc." (TR 180). The ALJ's RFC limits Plaintiff to no climbing of

ladders, ropes or scaffolds. Plaintiff has not identified any limitation by any of his physicians which is more restrictive than the ALJ's RFC. It is worth noting that to the extent the physicians discussed Plaintiff's ability to return to work, it was in the context of his prior work, which the VE classified as having been performed at heavy to very heavy exertion and the physicians recognized as "strenuous." (TR 42, 206). As early as August 23, 2003, Dr. Van Duyne reported that Plaintiff was "probably 80% back to where he was when (sic) accident occurred. I agreed fully with him that we need to get him back to 100% before we send him back particularly with his kind of strenuous work." (TR 206). On September 4, 2004 Dr. Van Duyne noted that Plaintiff had reported that he attempted to return to work but the union committee would not let him return and that Plaintiff felt that he could go back to work and avoid "some parts of the job that might be too much." (TR 193).

Medical consultant Charles G. Edmonds, M.D., evaluated the record and completed a Physical Residual Functional Capacity Assessment dated June 21, 2006, opining that Plaintiff can lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours of an eight-hour workday, sit about six hours of an eight-hour workday, and is unlimited in the ability to push and/or pull except as limited in lifting and carrying. (TR 236-243). Dr. Edmonds opined that Plaintiff can frequently balance, but only occasionally climb ladders, scaffolds, ropes, ramps or stairs, stoop, kneel, crouch and crawl. (TR 238). The ALJ's RFC is consistent with this Assessment. Despite Plaintiff's comment that this consultant evaluated Plaintiff based only on the low back condition, Plaintiff does not point to any other restrictions of record related to other conditions, including the carpal tunnel syndrome, which are inconsistent with either Dr. Edmonds assessment or the RFC. The ALJ's RFC includes a limitation that Plaintiff cannot perform constant handling or fingering and Plaintiff has not identified a limitation in the record more restrictive than the RFC in this respect.

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 at *2 (6th Cir. 1987).

The ALJ's findings show that he properly considered the entire record and the RFC is supported by substantial evidence. The ALJ incorporated each of the RFC limitations in his hypothetical question to the VE, who testified to a number of available jobs in the economy. (TR 21). The ALJ properly relied on the VE's testimony in response to a hypothetical question which incorporated Plaintiff's limitations as substantial evidence that there are a significant number of jobs available in the economy which Plaintiff can perform. The ALJ's decision was supported by substantial evidence in the record and his findings were articulated in his decision.

### 3. *Whether the ALJ Erred in Determining the Date Last Insured and Onset Date*

At the end of his brief, Plaintiff states that the ALJ set forth an incorrect date last insured as December 31, 2008. Plaintiff stated that the records show that his date last insured is June 30, 2010. Defendant's brief does not address this issue. "Plaintiff's eligibility for DIB is determined by the last date that he was insured for such benefits. Plaintiff's insured status ceased in the last quarter in which he had twenty quarters of contribution into the Social Security system within a forty-quarter period." *Kruse v. Comm'r of Soc. Sec.*, 2009 WL 902440 *5 (W.D. Mich. Apr. 2, 2009) (citing 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b); *Schacht v. Barnhart*, 2004 WL 2915310 at * 7, fn. 1 (D.Conn. Dec. 17, 2004)).

The ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2008." (Docket no. 15). The ALJ's finding is supported by the Field Office Disability Report and the abbreviated Field Office DIB Review Sheet. (Docket no. 93, 102). Plaintiff is correct that the DISCO DIB Insured Status Report shows Plaintiff's date last insured as June 30, 2010. (Docket no. 88). Several documents in the record, however, indicate that Plaintiff last met the insured status as of December 31, 2008 or December 2008. The ALJ's finding is supported by substantial evidence. Even if it were in error, the conclusion that Plaintiff's date last insured is December 31, 2008 is harmless error where the onset date was prior to the date last insured. The ALJ's denial of disability benefits did not turn on Plaintiff's date last insured. *See Gibson v. Astrue*, 2009 WL 3757686 *3 (D.S.C. Nov. 9, 2009) (The Court finds *Gibson* persuasive where the *Gibson* court noted that Plaintiff "failed to show how she has been prejudiced by the use" of the incorrect onset date. "An error is harmless if it does not prejudice [the claimant].").

Plaintiff also argues that the ALJ incorrectly stated that Plaintiff had amended his onset date to January 22, 2006. The ALJ stated on the first page of the decision that Plaintiff "amended his onset date at the hearing to January 22, 2006." (TR 13). The transcript shows that at the hearing the ALJ noted that there had been "some preliminary discussions as to whether or not [Plaintiff] might amend his Onset Date," and that they were going to reserve that issue for the time being and renew it at the close of the hearing, which was referenced again only generally at the close of the hearing. (TR 44). There is no evidence that the issue of amending the onset date was resolved at the hearing. Despite the ALJ's statement that Plaintiff amended his onset date, at the end of his decision the ALJ also made the finding that Plaintiff "has not been under a disability . . . from June 5, 2003 through the date of this decision . . . ." (TR 19). The ALJ's decision discusses thoroughly

16

the evidence of record from as far back as Plaintiff's June 2003 injury. The ALJ considered Plaintiff's impairments from the original alleged onset date forward. (TR 17).

The Court notes that the ALJ is not bound to accept the alleged onset date. "In most cases where the alleged onset date and the actual onset date are not the same, the actual onset date will probably be subsequent to the alleged onset date. In that situation, the Secretary is clearly not bound by the alleged onset date." *Goodson v. Bowen*, 639 F. Supp. 369, 373 (W.D.N.C. 1986) (citing *Cox v. Secretary*, 521 F.Supp. 1295, 1298 (E.D.Pa.1981)).

Plaintiff has shown no prejudice from the ALJ's determination that the onset date was amended, nor has Plaintiff otherwise shown that such a finding is not supported by substantial evidence. Even if ALJ erred in finding that Plaintiff had amended the onset date, the error is harmless. As set forth above, the ALJ's decision to deny disability, including the finding that Plaintiff has not been under a disability from June 5, 2003, is supported by substantial evidence and the ALJ considered all evidence of record. The Court notes that the ALJ's finding of an amended later onset date was neither a factor in the credibility determination nor otherwise had an effect on the ALJ's final determination.

## VI.  CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 9) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 12) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for

in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 30, 2010          s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 3, 2010             s/ Lisa C. Bartlett
                               Case Manager

18